IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-395-D

RANDY CLAYTON JOYNER,          )
                               )
    Plaintiff/Claimant,        )
                               )
                               )      **MEMORANDUM AND**
    v.                         )      **RECOMMENDATION**
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social Security, )
                               )
    Defendant.                 )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-17, -25] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Randy Joyner ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI payments on December 1, 2011, alleging disability beginning July 3, 2006, later amended to an onset date of December 1, 2011. (R. 53, 226-30, 252). The claim was denied initially and upon reconsideration. (R. 53, 89-114). A hearing before an Administrative Law Judge ("ALJ") was held on January 24, 2014, at which Claimant,

represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 53, 64-88). On February 21, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 50-63). Claimant then requested a review of the ALJ's decision by the Appeals Council, which after incorporating additional evidence into the record, denied review on April 28, 2015. (R. 44-47). On August 6, 2015, the Appeals Council set aside its April 28, 2015 action to consider additional information, but ultimately denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial

2

evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the application date. (R. 55). Next, the ALJ determined Claimant had the severe impairments of chronic back and neck pain, organic mental disorder, and anxiety disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 55-56). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate difficulties in activities of daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation of an extended duration. (R. 56).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant has the ability to perform medium[1] work with the following specific limitations: perform simple, routine, repetitive tasks; occasional contact with the general public; non-production environment; and no more than occasional work changes. (R. 56-61). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely credible. (R. 57). At step four, the ALJ concluded Claimant is not capable of performing any past relevant work. (R. 61). Nevertheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 62-63).

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If an individual can do medium work, he or she can also do sedentary and light work. 20 C.F.R. § 416.967(c).

4

Claimant contends the ALJ (1) erred in failing to evaluate his impairments under Listing 12.05C for intellectual disability, and (2) erred in finding he maintained the RFC to perform medium exertion work. Pl.'s Mem. [DE-18] at 10-15.

## V. DISCUSSION

### A.     Listing 12.05C

To show disability under the listings, a claimant may present evidence either that the impairment meets or medically equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); 20 C.F.R. §§ 416.925, 416.926. Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. §§ 416.920(d), 416.925(c)(3), 416.926. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). "Plaintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (unpublished) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Thus, where a claimant "fails to articulate why h[is] medical impairments do, in fact, meet all of the elements of a given listed impairment," he fails to meet this burden. *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

To meet the specific requirements of Listing 12.05, a claimant's impairment must first satisfy the diagnostic description for intellectual disability. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00A. Specifically, the claimant must demonstrate "deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." *Jackson v. Astrue*, 467 F. App'x 214, 217 (4th Cir. 2012) (unpublished) (quoting

5

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05). Upon satisfaction of the diagnostic description, the claimant must meet the required severity level of the disorder, which is accomplished by satisfying any one of four categories labeled A through D. *Id.* Claimant contends his impairment satisfies the intellectual disability listing under category C, Pl.'s Mem. [DE-18] at 10-13, which requires (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, imposing an additional and significant work-related limitation of function, 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C. The ALJ did not expressly consider whether Claimant's impairments meet or equal Listing 12.05C. (R. 55-56). At step three the ALJ stated that "[n]either the claimant nor his representative attorney alleged that he meets or equals any listed impairment." (R. 55). However, Claimant asserted in his pre-hearing brief submitted to the ALJ that his mental impairments meet or equal Listing 12.05. (R. 314, 320-21).

The Fourth Circuit has found error where there is evidence in the record that would support a finding that a claimant's impairments meet a listing, but the ALJ fails to provide a full explanation in support of a contrary determination. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (concluding the ALJ's "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings") (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). Where there are inconsistencies in the record and the ALJ fails to conduct the requisite analysis, the court cannot conduct a meaningful review. *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (unpublished) (remanding where the ALJ failed to explain the claimant's failure to meet a listing and there was contradictory evidence in the record) (citing *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Radford*, 734 F.3d at 296). Thus, the court must consider whether there is evidence in the record regarding the listing that could support a

finding favorable to Claimant.

Claimant contends that he has deficits in adaptive functioning initially manifested during the developmental period, as evidenced by his participation in the learning disabled program at school, low average intellectual functioning and adaptive behavior, and dropping out of school in the eighth grade. Pl.'s Mem. [DE-18] at 11 (citing R. 609-15). Claimant also contends his Full Scale IQ of 59 and severe impairments of chronic neck and back pain and anxiety satisfy the category C criteria. *Id.* at 12-13. The Commissioner counters that the ALJ was not required to consider Listing 12.05C because the record lacked "ample evidence" to support a finding that Claimant met the criteria for the listing. Def.'s Mem. [DE-26] at 10. There is sufficient evidence of record, cited by Claimant, from which the ALJ could find that Claimant's impairments meet or equal Listing 12.05C, and the ALJ's failure to conduct the requisite analysis of the listing at step three was error.

Despite the evidence of Claimant's poor academic performance and behavioral problems in school, the Commissioner contends that because Claimant's IQ scores during the developmental period were too high to satisfy the category C criteria, which requires a valid verbal, performance, or full scale IQ of 60 through 70, Claimant cannot demonstrate "deficits in adaptive functioning during his developmental period arising out of low IQ." Def.'s Mem. [DE-26] at 11-12. In May 1984, when Claimant was in sixth grade, his IQ scores were 85 verbal scale, 90 performance scale, and 86 full scale. (R. 609). It was noted that Claimant's functioning was "slightly higher" than when he was evaluated three years prior, due to the assistance he was receiving and he should continue in the learning disabled program. (R. 610). In February 1986, Claimant was tested again and his IQ scores were 74 verbal scale, 87 performance scale, and 79 full scale. (R. 611). In June 2007, Claimant underwent a psychological evaluation related to his disability application. (R. 357-

7

61). Claimant's IQ scores were 60 verbal scale, 67 performance scale, and 59 full scale, indicating Claimant was functioning within the mild range of mental retardation. (R. 359). The evaluator concluded that the IQ scores appeared to be accurate and that "a diagnosis of mental retardation may be offered if historical information could substantiate that diagnosis," but noted that no prior psychological evaluation or school records were available at that time for comparison. (R. 360).

The Commissioner takes the position that the IQ scores from Claimant's developmental period constitute such "historical information" and precludes a finding of deficits in adaptive functioning. Def.'s Mem. [DE-26] at 12. However, as explained above, the deficits-in-adaptive-functioning requirement is distinct from the IQ score requirement. *See Wiggins v. Astrue*, No. 5:11-CV-85-FL, 2012 WL 1016055, at *4 (E.D.N.C. Mar. 22, 2012) (unpublished); *see also Jackson*, 467 F. App'x at 217-18 (analyzing the IQ-score requirement and the presence of another impairment separate and apart from the deficits-in-adaptive-behavior requirement). The Commissioner has not provided the court with any authority for the proposition that an IQ score during the developmental period that fails to meet the category C requirement precludes a finding of deficits in adaptive functioning. And, relatedly, the Fourth Circuit has not held that a sufficiently low IQ score alone can satisfy the deficits-in-adaptive-functioning requirement, suggesting that IQ should not be a determinative factor in assessing deficits in adaptive function. *Wiggins*, 2012 WL 1016055, at *4 (quoting *Edge v. Astrue*, 627 F. Supp. 2d 609, 618 (E.D.N.C. 2008)). Furthermore, the IQ and additional work-related limitation found in category C do not contain the condition that they be "initially manifested during the developmental period," which is only found in the diagnostic description. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05.

Evidence such as Claimant's participation in the learning disabled program at school, low

8

average intellectual functioning and adaptive behavior, repeating kindergarten, receiving poor grades, and dropping out of school in the eighth grade (R. 358, 609-615) has been found by the courts to constitute indicia of deficits in adaptive functioning initially manifested during the developmental period. *See Jackson*, 467 F. App'x at 218 ("Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.") (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)); *Ragin v. Colvin*, No. 5:14-CV-851-D, 2016 WL 2600508, at \*7 (E.D.N.C. Apr. 14, 2016) (unpublished) (finding enrollment in special education classes provides further support for manifestation of the intellectual deficiency prior to age twenty-two) (citations omitted), *adopted by* 2016 WL 2347872 (May 3, 2016); *Williams v. Colvin*, No. 5:12-CV-676-D, 2013 WL 6058204, at \*8 (E.D.N.C. Nov. 15, 2013) (unpublished) (finding that claimant only completing through the sixth grade in school, repeating the third and fourth grades, and reporting (albeit inconsistently) that he attended special education classes constituted evidence of deficits in adaptive functioning); *Wynne v. Astrue*, No. 5:09-CV-367-FL, 2010 WL 2402843, at \*5 (E.D.N.C. May 21, 2010) (unpublished) (finding deficits in adaptive functioning in functional academic skills area shown where claimant "received a seventh grade education only and repeated both third and sixth grades"). The Commissioner suggests that there could be reasons other than intellectual disability for Claimant's placement in special education classes. Def.'s Mem. [DE-26] at 13. However, Claimant's school records indicate that he needed special instruction because of his "EH classification and learning disabilities" and that he was continued in learning disabled classes due to his low average intellectual functioning and adaptive behavior. (R. 610, 612). Additionally, the ALJ in discussing Claimant's mental impairments in the

9

RFC found that "remote intellectual testing shows low borderline intelligence." (R. 60); *see Ragin*, 2016 WL 2600508, at *7 ("[T]he determination by the ALJ that plaintiff has borderline intellectual functioning establishes that plaintiff has significantly subaverage general intellectual functioning.").

Moreover, the deficits in adaptive functioning must be "*initially* manifested during the developmental period," 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05 (emphasis added), and the court has previously considered evidence outside the developmental period as well, finding moderate difficulties in concentration, persistence, or pace, such as the ALJ found here, to be evidence of deficits in adaptive functioning. *See Ragin*, 2016 WL 2600508, at *7 ("[A] finding that a claimant has [] difficulties [in concentration, persistence, or pace] has been held to be facially inconsistent with a finding that the claimant has no deficits in adaptive functioning under Listing 12.05C and to require remand if the apparent inconsistency is not squarely resolved.") (citing *Mebane v. Colvin*, No. 2:13-CV-43-FL, 2014 WL 3510208, at *6-7 (E.D.N.C. July 15, 2014) (unpublished); *Rothrock v. Colvin*, No. 1:13CV497, 2016 WL 1175189, at *7 (M.D.N.C. Mar. 23, 2016) (unpublished)). The ALJ's limitation on Claimant's contact with the public may also serve as evidence of deficits in adaptive functioning. *See Williams*, 2013 WL 6058204, at *9 (finding questionable social skills can be evidence of a deficit in adaptive functioning).

The Commissioner also contends that Claimant's long work history as a painter is inconsistent with deficits in adaptive functioning. Def.'s Mem. [DE-26] at 12-13. However, although work history may be relevant to the inquiry, the court has previously recognized that "prior work history can be of limited relevance if it precedes the development of additional severe impairments," *Mebane*, 2014 WL 3510208, at *6, as is the case here where Claimant later developed chronic neck and back pain and anxiety disorder. *See Ragin*, 2016 WL 2600508, at *8 (noting that

10

Listing 12.05C "contemplates the circumstance in which a claimant with an intellectual impairment would be able to work but for one or more additional impairments"). Accordingly, there is sufficient evidence of record from which the ALJ could find deficits in adaptive functioning.

There is also evidence in the record to support a finding that Claimant's impairments satisfied the category C severity requirements. The "significant work-related limitation" requirement is satisfied where the ALJ has found that a claimant has other severe impairments. *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (describing "significantly limits" as, "i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)"). Here, the ALJ at step two found Claimant's chronic neck and back pain and anxiety disorders to be severe impairments. (R. 55). With respect to the IQ requirement, there are three sets of IQ scores in the record, the most recent of which would satisfy the category C requirement. (R. 359, 609, 611). "[A]n ALJ is permitted 'to weigh conflicting IQ test results,' and to make a disability determination on the basis of 'one of two conflicting pieces of evidence.'" *Covington v. Colvin*, No. 5:12-CV-378-FL, 2013 WL 3879909, at *4 (E.D.N.C. July 26, 2013) (unpublished) (internal citation omitted) (quoting *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir.1987)). Here, in the RFC discussion, the ALJ recited Claimant's 2007 IQ scores, but noted the assessment was performed more than six years ago and did not support his allegations of inability to relate to others or to tolerate stress and pressure at the present. (R. 57). The ALJ did not consider the scores in the context of Listing 12.05C, and the Fourth Circuit has been clear that it is not the province of the district court to make such determinations in the first instance. *See Radford*, 734 F.3d at 296 ("Given the depth and ambivalence of the medical record, the ALJ's failure to adequately explain his reasoning precludes this Court and the district court from undertaking a "meaningful

11

review" of the finding that [the claimant] did not satisfy [the listing].").

Accordingly, where there is evidence in the record that arguably supports a favorable finding that Claimant's impairments meet or equal Listing 12.05C, it is recommended that the matter be remanded for the ALJ to conduct the requisite analysis in the first instance. *See Morgan v. Colvin*, No. 7:13-CV-279-BO, 2014 WL 6473525, at *2 (E.D.N.C. Nov. 18, 2014) (unpublished) (finding the "ALJ's failure to consider Listing 12.05C ... where there is obviously evidence that may support the listing, is clear error."); *Covington*, 2013 WL 3879909, at *8 ("Because the record arguably supports a finding that Plaintiff meets Listing 12.05, and the ALJ failed to adequately explain his findings with regard to that Listing, remand is required.").

## B. The ALJ's RFC Analysis

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio*, 780 F.3d at 636 (quoting S.S.R. 96-8p). Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined

12

effect of a claimant's impairments.") (citations omitted).

Claimant contends the ALJ erred in finding Claimant capable of performing work at the medium exertion level. Pl.'s Mem. [DE-18] at 13-15. Claimant submits his back and neck pain preclude him from lifting 50 pounds and significantly limit his ability to stand and walk, as required for medium work. *Id.* at 14. Claimant also argues that the ALJ failed to analyze how Claimant's mental impairments would impact his ability to perform unskilled work, noting that he would have extreme difficulty with changes in a routine work setting and responding to work stress due to his depression and anxiety. *Id.* at 15. The Commissioner contends the ALJ's determination that Claimant can perform medium work is supported by substantial evidence of record and that the ALJ's RFC included all mental limitations supported by the record. Def.'s Mem. [DE-26] at 14-17.

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 416.929(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are

13

supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Claimant argues that his testimony regarding his limitations on walking and sitting due to his pain and the side effects of his mediation is consistent with the medical evidence of record and is entitled to great weight. Pl.'s Mem. [DE-18] at 14. In formulating Claimant's RFC, the ALJ considered Claimant's testimony at the administrative hearing, the medical records, and the opinion evidence. (R. 57-61). The ALJ determined that, with respect to Claimant's back and neck pain, the objective medical findings and course of treatment were inconsistent with the degree of limitation alleged by Claimant. (R. 59). The ALJ specifically noted "only mild degenerative changes of the lumbar spine and remote findings of cervical disc bulge at C5-6 on the right, which did not correlate with the claimant's complaints related to the left side of his neck." *Id.*; (R. 433, 502). The ALJ

14

acknowledged Claimant had clinical findings of tenderness and spasm of the lumbosacral spine, but also noted Claimant had fairly good range of motion, no evidence of abnormality of the upper or lower extremities, was neurologically intact with full strength and without sensory or reflex deficits, had normal gait and station, and did not require the use of an assistive device for ambulation. (R. 60, 387-91, 398-409, 412-29, 569-79, 598-99, 602-03). The ALJ found that Claimant consistently reported his pain medication provided significant improvement in his pain, that his treatment regimen had been conservative and relatively unchanged, and that when Claimant remained compliant he had a good response to treatment. (R. 60, 398, 406, 408, 424, 428). In assessing a Claimant's credibility, the ALJ may appropriately consider whether the claimant's statements are supported by the objective medical record, S.S.R. 96-7p, 1996 WL 374186, at *2, and the conservative nature of the claimant's treatment. *See Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. June 1, 2015) (unpublished) ("[I]f all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); *Richardson v. Colvin*, No. 4:14-CV-00125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (unpublished) (finding conservative treatment lends little support to claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015).

The ALJ also considered Claimant's activities of daily living and work history in finding his testimony on the severity of his impairments not entirely credible. (R. 60). For example, while the ALJ acknowledged that Claimant reported engaging in few activities of daily living, Claimant also reported his back pain increased after he "bumped it" laying wire in an attic after the alleged onset date, which undermines Claimant's testimony regarding the severity of his limitations. (R. 60, 398). The ALJ further cited Claimant's "very minimal" work history over the 15 years prior to his alleged

15

onset date as a factor negatively weighing on Claimant's credibility. *See Tanner v. Colvin*, No. 4:15-CV-27-FL, 2016 WL 626493, at *14 (E.D.N.C. Jan. 26, 2016) (unpublished) (finding the ALJ appropriately considered Claimant's poor work history and minimal earnings in assessing credibility), *adopted by* 2016 WL 617431 (Feb. 16, 2016); *Locklear v. Colvin*, No. 7:14-CV-00155-D, 2015 WL 5093352, at *6 (E.D.N.C. Aug. 10, 2015) (unpublished) (finding poor work history, among other things, constituted substantial evidence for the ALJ's finding that the claimant was not entirely credible), *adopted by* 2015 WL 5093358 (Aug. 28, 2015). The ALJ, in accordance with Ruling 96-7p, properly considered the entire case record in making a credibility finding and the determination is supported by substantial evidence. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). Accordingly, Claimant's testimony does not undermine the ALJ's RFC assessment.

Claimant next argues that the ALJ failed to analyze how his mental impairments would impact his ability to work. Pl.'s Mem. [DE-18] at 15. Claimant specifically asserts he would have extreme difficulty dealing with changes in the routine work setting and cannot respond to typical stress or interruptions, precluding even unskilled work. *Id.* The ALJ expressly discussed Claimant's mental impairments in formulating the RFC:

> In terms of the claimant's mental impairments, the claimant has no history of significant mental health treatment. Likewise, the objective mental status findings are fairly benign showing a normal mood and affect. His memory appears intact and his attention and concentration are not significantly impaired. However, the claimant has recently reported some anxiety-related symptoms for which he is treated with anti-anxiety medications by his primary care source. In addition, he reports a history of special education classes and remote intellectual testing shows low borderline intelligence. Therefore, the undersigned has included mental restrictions in the assessed residual functional capacity for simple, routine, repetitive tasks with

16

occasional contact with the general public and in a non-production environment with
no more than occasional work changes.

(R. 60). The ALJ accounted for Claimant's limitations in dealing with changes in the workplace and stress by limiting his contact with the public, the pace of work, and the amount of work changes. *Id.* Finally, while Claimant was hospitalized twice within a three month period in December 2014 and February 2015 for depression, opioid detox, psychosis, and suicidal ideations (R. 9-42), this occurred nine months to a year after the ALJ issued the decision and the Appeals Council found this information to be new information about a later time (R. 2). Claimant has failed to demonstrate that this evidence relates to the time period on or before the ALJ's decision. *See Eason v. Astrue*, 2008 WL 4108084, at *3 (E.D.N.C. Aug. 29, 2008) (unpublished) ("[T]he claimant must show how the new evidence relates to the claimant's medical condition as it was at the time of the hearing.") (citations omitted). Accordingly, Claimant's argument that the ALJ failed to analyze and account for his mental impairments in the RFC is without merit.

In sum, the ALJ appropriately considered Claimant's testimony, the medical evidence, and the opinion evidence in determining Claimant's RFC, providing "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (citing *Hines*, 872 F.2d at 59). Accordingly, it is recommended that the ALJ's RFC determination be upheld.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-17] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-25] be DENIED, and the case be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **January 3, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

SUBMITTED, this the 20th day of December 2016.

Robert B. Jones, Jr.
United States Magistrate Judge